

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

By ECF  
Honorable Lewis A. Kaplan  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

May 19, 2020

      Re:    In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation, 18-md-2865 (LAK)

Dear Judge Kaplan:

      Plaintiff respectfully submits this reply in further support of its May 13, 2020 letter motion to compel ED&F Man Capital Markets, Ltd. ("ED&F") to produce documents.

      <u>First</u>, the Court should not "defer" ruling on SKAT's motion until the English High Court of Justice rules on ED&F's privilege application in that court. SKAT filed its motion in this Court because it seeks resolution of a ripe discovery dispute in these proceedings. The very next day, in a blatant attempt at forum shopping, ED&F filed its application with the English court, despite the fact that there is no current dispute over these documents in that proceeding. The Court should not permit ED&F to select an alternative court to decide the issue SKAT raised in the U.S., and to do so on a timeline ED&F prefers. As the Court recognized at the March 5, 2020 conference, "English practice" is "a different kettle of fish in important respects from ours, and their needs are different than ours." (Mar. 5 Tr. 17:7-9.) There is no reason to believe that the English court will consider ED&F's application on a timeline consistent with the discovery schedule for SKAT's actions pending before this Court, or that the English court will even issue such an advisory ruling in that case at all.

      <u>Second</u>, the English litigation privilege, even if applicable, would not protect ED&F's reports to its U.K. regulator, the FCA, or ED&F's presentations to its board for substantially the same reason that the U.S. work product doctrine affords no such protection.[1] As ED&F acknowledges in its opposition, "ED&F was legally bound to submit its report to the FCA," so ED&F would have had to report to the FCA irrespective of any anticipated litigation. (Opp. 2 n.1.) Despite this admission, ED&F's opposition ignores entirely that it was required to communicate critical business facts to its regulator and board, irrespective of any anticipated litigation or legal advice. Reports that ED&F was "legally bound" to provide to its regulator, *by*

---

1. In its privilege log, ED&F asserted that it is withholding the FCA and board materials based on "work product," "attorney-client privilege," or FSMA § 348. ED&F's assertion of the work product doctrine—the U.S. analogue of the English litigation privilege—is "not subject to a choice of law analysis" because "it is procedural in nature." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 73 (S.D.N.Y. 2010).

*definition*, were not created for the sole or dominant purpose of litigation.[2] The same is true for presentations to ED&F's board about ED&F's issuance of false custodial statements. ED&F had to inform its board how and why it issued false custodial statements irrespective of any litigation. In the event that the Court grants ED&F's request to "more fully brief the English law issue to this Court," (Opp. 2), SKAT requests that the Court likewise permit it to submit a supplemental brief, including an opportunity to address any attempt by ED&F to satisfy its substantial burden to establish, on a document-by-document basis, any privilege under English law.

Finally, ED&F argues that SKAT's motion "is putting the cart before the horse" in seeking to compel production in advance of ED&F's document production. (Opp. 1.) But, rather, it is ED&F that seeks to hide the horse in the barn by stonewalling SKAT's requests for production as the discovery clock ticks away, and by claiming that every written explanation of how it issued the false tax vouchers is protected from disclosure. SKAT served its document requests on ED&F on September 30, 2019; the Court denied ED&F's motion for a protective order on November 7, 2019; and on March 23, 2020, ED&F represented to the Court that it would begin making its belated document production on May 1, 2020. Yet, despite the passage of nearly 8 months and ED&F's representations to the Court, ED&F still has not produced ***any*** documents, non-privileged or otherwise, concerning ED&F's purported trading and custodying of billions of dollars of Danish securities, much less documents sufficient to test ED&F's contention that only 89 of the 389 vouchers it issued are false. ED&F's protestations that it needs more time to review these records is obviously untrue, as ED&F provided such records to the individual defendant Plans back in 2018. Moreover, raw trading records will not reveal the critical facts that SKAT and the Plan defendants need to plan and take discovery: who at ED&F directed the issuance of false custodial statements, why, and how ED&F decided which statements to falsify.

As a regulated custodian, ED&F had a critical business need, irrespective of any anticipated litigation or legal advice, to determine how it issued statements falsely confirming holdings of Danish shares, who was responsible, and why they acted so. ED&F can redact legal advice, but no privilege protects those basic business facts.

\*\*\*

For the reasons set forth above and in its letter motion, SKAT respectfully requests that the Court grant its motion to compel, and order such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

cc:   All counsel of record (via ECF)

---

2.  The English authority of *Three Rivers District Council v Governor & Company of the Bank of England (No6)* [2005] 1 AC 610, relied on by ED&F and contained in its Exhibit 3, makes clear that communications in connection with investigative or inquisitorial processes do not benefit from litigation privilege, as appears to the be case here for the FCA investigation. Principle 11 and Supervision 15 of the FCA Handbook read together with section 413 of the FSMA confirms that because ED&F was, as it admits, "legally bound" to submit the reports, they are not protected by the litigation privilege. Under that section, ED&F "may not be required under th[e] Act to produce, disclose or permit the inspection of protected items," which are generally defined to include communications and items subject to the English legal advice or litigation privilege.