```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKATTEFORVALTNINGEN)           18-md-2865 (LAK)
TAX REFUND LITIGATION

This paper applies to:       18-cv-5374, 18-cv-5053,
                             18-cv-8655
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/2026

### MEMORANDUM OPINION DISMISSING THIRD-PARTY COMPLAINTS AGAINST ED&F FOR WANT OF PERSONAL JURISDICTION

Appearances:

    John C. Blessington
    John L. Gavin
    K&L GATES LLP

    Sharon L. McCarthy
    Nicholas S. Bahnsen
    Daniel C. Davidson
    KOSTELANETZ LLP

*Attorneys for Defendants-Third-Party Plaintiffs*

    Neil S. Binder
    M. Tomas Murphy
    Amy C. Torres
    Hillary Black
    BINDER & SCHWARTZ LLP

*Attorneys for Third-Party Defendant*

LEWIS A. KAPLAN, *District Judge*.

        This multidistrict litigation has included 187 individual cases of which 100 were commenced in this district and the balance in ten other states. Most of the cases commenced in this

district have been resolved through trial or settlement.  Three of the remaining cases are set for trial next month.  In connection with those cases, third-party defendant MCML Limited f/k/a ED&F Man Capital Markets, Ltd. ("ED&F") has moved for summary judgment on the ground, among others, that the Court lacks personal jurisdiction over it.

### *Facts*

The Court assumes familiarity with the underlying facts of this matter and its lengthy procedural history.[1]  As relevant here, the Court on three previous occasions has rejected essentially the same argument that ED&F makes regarding personal jurisdiction.[2]  On each of those occasions, however, the Court lacked the benefit of a fully developed evidentiary record and therefore could not conclude as a matter of law that it lacked personal jurisdiction over ED&F.  With the parties now having submitted evidence and Rule 56.1 statements,[3] the following facts are undisputed.

---

[1] *See generally In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308-09 (S.D.N.Y. 2019) (LAK); *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL 7059843, at *1 n.2 (S.D.N.Y. Dec. 2, 2020) (collecting cases); *In re Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2021 WL 4993536, at *1-2 (S.D.N.Y. Oct. 26, 2021).

[2] *See SKAT*, 2021 WL 4993536, at *2-8; Pretrial Order No. 38 (Dkt 1017) at 1; Pretrial Order No. 50 (Dkt 1510) at 1.

[3] S.D.N.Y. Local Civ. R. 56.1.

*ED&F*

At all relevant times, ED&F was headquartered in England.[4] It was a London-based financial brokerage firm that ceased operating in or about October 2022.[5] Between 2012 and 2013, ED&F entered into contracts with defendants-third-party plaintiffs the Goldstein Law Group PC 401(K) Profit Sharing Plan (the "Goldstein Plan"), the Federated Logistics LLC 401 K Plan (the "Federated Plan"), and – through Hamlyn LP – the Del Mar Asset Management Savings and Retirement Plan (the "Del Mar Plan") (collectively, the "Plans").[6] ED&F contracted to perform certain custodial and trading services for each of the Plans, all of which were U.S.-based pension plans.[7]

Until 2015, ED&F purportedly purchased and sold shares of Danish securities on behalf of the Plans.[8] In connection with these trades, ED&F prepared tax vouchers indicating that the Plans held Danish securities on relevant securities' dividend dates and that they received dividends paid on the securities net of a Danish income tax withheld at the source.[9] Had the facts

---

[4] ED&F's R. 56.1 Statement Supp. ED&F's Mot. Summ. J. (Dkt 1872) (hereinafter, "ED&F 56.1") ¶¶ 11, 13.

[5] *Id.* ¶¶ 11-12.

[6] *Id.* ¶¶ 15, 343.

Hamlyn LP was a Gibraltarian limited partnership of which the Del Mar Plan was the sole limited partner by April 2013. *Id.* ¶¶ 327, 354.

[7] *Id.* ¶¶ 8, 15.

[8] *Id.* ¶¶ 16, 336, 367.

[9] *Id.* ¶¶ 17-18.

been as represented, the Plans would have been entitled by virtue of a U.S.-Denmark taxation treaty to recover reclaims – i.e., refunds of the tax that would have been withheld – from the Customs and Tax Administration of the Kingdom of Denmark ("SKAT").  ED&F sent these vouchers to a payment agent that in turn submitted them to SKAT, which paid the claimed reclaims.[10]  Some or all of those reclaims allegedly were fraudulent and are at the center of SKAT's actions against the Plans and the Plans' third-party actions against ED&F.

*The Plans*

The Goldstein Plan is a 401(k) plan for the employees of the Goldstein Law Group, P.C.[11]  At all relevant times, the participants in and trustees of the Goldstein Plan were residents of New York.[12]  The Plan was held out as having an address in New York and an investment account with a bank in New York through which money was transferred in connection with the Goldstein Plan's trading activity.[13]

---

[10] *Id.* ¶¶ 19-20.

[11] *Id.* ¶¶ 93-94.

[12] *Id.* ¶¶ 96-99, 105-06; *see* Third-Party Pls.' Resp. ED&F 56.1 (Dkt 1931) (hereinafter, "TPP Resp.") ¶¶ 100-01.

[13] ED&F 56.1 ¶¶ 108, 112, 418-19.

The Federated Plan was a 401(k) plan of Federal Logistics LLC, a company headquartered in Connecticut.[14] At all relevant times, it had one participant and two trustees, all of whom were residents of Connecticut.[15]

Finally, the Del Mar Plan was a 401(k) plan of Del Mar Asset Management, L.P.[16] Del Mar Asset Management, L.P. was formed in Delaware and had its principal place of business in New York.[17] At all relevant times, the trustees of the Del Mar Plan – the same trustees as of the Federated Plan – were residents of Connecticut, although they represented the Del Mar Plan as being located in New York.[18]

*The Investment Managers*

There is no evidence that ED&F took on the Plans as clients by virtue of soliciting their business in New York or Connecticut.[19] Indeed, ED&F by and large did not interact with the Plans at all.[20] It instead communicated with investment managers who had powers of attorney to

---

[14] *Id.* ¶¶ 373-74.

[15] *Id.* ¶¶ 351-52, 375-77.

[16] *Id.* ¶¶ 344-45.

[17] *Id.* ¶¶ 346-47.

[18] *Id.* ¶¶ 348-53.

[19] *See id.* ¶¶ 22-23.

[20] *Id.* ¶¶ 60, 116-17, 333; TPP Resp. ¶ 117.

6

act on behalf of the Plans with respect to their purported Danish securities trading.[21] In other words, investment managers decided which securities the Plans would buy and sell.[22] Those investment managers instructed ED&F to provide the tax vouchers purportedly entitling the Plans to reclaims to payment agents that in turn submitted them to SKAT.[23] ED&F sometimes sent copies of the tax vouchers to those investment managers, who sometimes provided copies to the Plans.[24]

Defendant-third-party plaintiff Acer Investment Group, LLC ("Acer") was the investment manager for the Goldstein Plan.[25] Acer is a limited liability company formed in Delaware with its principal place of business initially in New Jersey and then Florida.[26] At all relevant times, it was owned and managed by two individuals.[27] One (now deceased) was first a resident of New Jersey and then of Florida.[28] The other has been a resident of Utah at all relevant times.[29]

---

[21] ED&F 56.1 ¶¶ 59, 60, 92, 114, 338-40, 380-83; TPP Resp. ¶¶ 58, 64, 69-70.

[22] ED&F 56.1 ¶¶ 92, 341-42, 359, 362, 381; *see* TPP Resp. ¶¶ 61, 67.

[23] ED&F 56.1 ¶ 71.

[24] *Id.* ¶ 72; ED&F's Resp. TPP's R. 56.1 Counterstatement Opp'n ED&F's Mot. Summ. J. (Dkt 1931) (hereinafter, "ED&F Resp.") ¶ 21.

[25] ED&F 56.1 ¶ 37.

[26] *Id.* ¶¶ 38, 49-50.

[27] *Id.* ¶¶ 54-55.

[28] *Id.* ¶ 79.

[29] *See id.* ¶¶ 138-39, 239.

7

Duet Asset Management Limited ("Duet") served as the investment manager for the Federated Plan – again, through Hamlyn LP.[30] Duet was incorporated in England and at all relevant times was based in London.[31]

*The Contracts*

As previously stated, ED&F contracted to perform certain custodial and related services for each of the Plans. Each contract contained a choice-of-law provision in substance stating that the agreement was to be governed by and construed in accordance with English law with any disputes to be resolved in English courts.[32] The Plans and ED&F similarly agreed for the Plans' brokerage accounts with ED&F to be maintained in London.[33]

*Prior Proceedings*

The Goldstein Plan case (18-cv-5053) and the Del Mar Plan case (18-cv-5374) were filed in this district. The Federated Plan case (18-cv-8655) was filed in the District of Connecticut and then transferred here on consent under 28 U.S.C. § 1404(a). It, along with the Goldstein and the Del Mar Plan cases, then was consolidated for pretrial purposes with the related cases already pending before this Court and those transferred in from other districts.

---

[30] *Id.* ¶¶ 85, 335.

[31] *Id.* ¶¶ 86, 88.

[32] *Id.* ¶¶ 392-95, 397-402.

[33] *Id.* ¶ 396.

Defendants-third-party plaintiffs in the Plans cases filed third-party complaints against ED&F. In the Goldstein Plan case, ED&F moved to dismiss the third-party complaint, which the Court granted without prejudice to defendants-third-party plaintiffs there amending the third-party complaint. ED&F then moved to dismiss the amended third-party complaint, which the Court denied. In the Federated Plan and Del Mar Plan cases, ED&F filed answers raising several affirmative defenses, one of which was lack of personal jurisdiction.

### *Discussion*

In order to defeat a jurisdictional challenge after discovery, a plaintiff must establish "facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."[34] "In diversity actions, as here, personal jurisdiction 'is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.'"[35]

Here, ED&F challenges the Court's personal jurisdiction over it in the Plans' third-party complaints as well as in several other cases involving Acer or Duet that were initiated in other districts, transferred to this district, and consolidated for pretrial proceedings in the multidistrict litigation. The Court, however, limits its discussion and ruling here to the cases involving the Plans.

New York law determines whether this Court has personal jurisdiction over ED&F in the Plans cases. The Goldstein Plan and Del Mar Plan cases were initiated in this district. And

---

[34] *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

[35] *SKAT*, 2020 WL 7059843, at *2 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).

9

the Federated Plan case was transferred into this district under 28 U.S.C. § 1404(a), before ED&F was impleaded as a third-party defendant. In such circumstances, the law of the transferee forum determines personal jurisdiction.[36] Defendants-third-party plaintiffs[37] contend that the Court has general and specific jurisdiction over ED&F and in any event that ED&F forfeited its right to challenge personal jurisdiction. Because forfeiture (if it applied) would be dispositive, the Court first addresses that issue and then takes in turn the issues of general and specific personal jurisdiction.

*Forfeiture*

Defendants-third-party plaintiffs argue that ED&F forfeited its right to challenge personal jurisdiction because it failed to do so by motion for a significant amount of time while participating in considerable pretrial activity. This is substantially the same argument that defendants-third-party plaintiffs made and the Court rejected four-and-a-half years ago.[38] Then, as

---

[36] *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) (collecting cases); 15 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3854 (4th ed. 2025) ("[T]ransfer is proper when it would be possible to join an additional defendant or to implead a third-party defendant who is not subject to personal jurisdiction in the original forum."); *see also Deepwater Expl. Co. v. Andrew Weir Ins. Co.*, 167 F. Supp. 185, 186 n.5 (D. La. 1958) (Skelly Wright, J.) (describing reasons for ordering transfer, including exercise of personal jurisdiction over proposed third-party defendant not subject to personal jurisdiction in transferor court).

[37] Here, defendants-third-party plaintiffs are Acer, the Del Mar Plan, the Federated Plan, and David Freelove – a trustee of the Del Mar Plan, ED&F 56.1 ¶ 349, and a defendant in the Del Mar Plan case, 18-cv-5374. The Goldstein Plan and Scott and Sheldon Goldstein – trustees of the Goldstein Plan, *id.* ¶¶ 97-98, 101 – formerly were third-party plaintiffs, but they since have agreed to dismiss their claims against ED&F with prejudice. ED&F's Reply Mem. Law Supp. Mot. Summ. J. (Dkt 1956) (hereinafter, "ED&F Reply") at 1 n.2.

[38] *See SKAT*, 2021 WL 4993536, at *3-4.

now, "none of ED&F's pretrial activities constituted consent to, nor forfeited its objection to, personal jurisdiction in these cases."[39]

*General Personal Jurisdiction*

Section 301 of the New York Civil Practice Law and Rules allows the exercise of general jurisdiction over a defendant company "if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted."[40]

Defendants-third-party plaintiffs' argument that ED&F has engaged in such a course of doing business in New York hinges on their disputed factual contention that "during the period relevant to this case, ED&F had an office, employees, and conducted business *in Manhattan*."[41] Defendants-third-party plaintiffs point to ED&F's answer in the Del Mar Plan case, which stated that ED&F was a "global financial brokerage with offices in . . . North America, including New York."[42] Defendants-third-party plaintiffs point also to archived copies of what purportedly was ED&F's website, which noted that "ED&F Man" had offices and employees in New York.[43] ED&F has responded that it made "a drafting oversight" in the cited pleading insofar as it meant to say that

---

[39] *Id.* at *4.

[40] *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33 (1990).

[41] Third-Party Pls.' Mem. Law Opp'n ED&F's Mot. Summ. J. (Dkt 1929) at 5 (emphasis in original).

[42] Bahnsen Decl., Ex. 196 (Dkt 1930-3) ¶ 5.

[43] *Id.*, Ex. 194 (Dkt 1930-3) at 10; *id.*, Ex. 195 (Dkt 1930-4) at 1.

companies affiliated with ED&F's parent company had New York offices.[44] And ED&F correctly notes that the archived webpages at most establish that some entity or entities affiliated with its parent company had New York offices. Most importantly, ED&F has sworn under the penalty of perjury that "[b]etween January 2012 and the present, [ED&F] has maintained no offices in . . . New York."[45] Defendants-third-party plaintiffs have not submitted any evidence sufficient to raise a genuine issue of material fact in that regard.

    The fact that ED&F affiliates conducted business in New York during the relevant period is insufficient to allow the Court to exercise general jurisdiction over ED&F. In *Sonera Holding B.V. v. Cukurova Holding A.S.*,[46] the Second Circuit considered an analogous situation in which the plaintiff brought an arbitration enforcement action in this district against the parent company of a Turkish conglomerate based on the New York-business activities of two Turkish companies affiliated with the defendant.[47] Like defendants-third-party plaintiffs here, the *Sonera* plaintiff invoked the agency theory of jurisdiction "that subjects a corporation to general jurisdiction when it relies on a New York representative entity to render services on its behalf 'that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available.'"[48] The Second Circuit explained that the

---

[44]  ED&F Reply at 6 n.6.

[45]  Pettit Decl. (Dkt 578) at 1.

[46]  750 F.3d 221 (2d Cir. 2014).

[47]  *Id.* at 223-24.

[48]  *Id.* at 224 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)).

12

Supreme Court's decision in *Daimler AG v. Bauman*[49] casts doubt on the "usefulness" of such an agency theory because the general personal jurisdiction analysis instead must focus on the defendant's "contacts with a state."[50]  Despite assuming that all of the affiliates' contacts should be imputed to the *Sonera* defendant, the Second Circuit concluded that the defendant's "contacts with New York do not come close to making it 'at home' there."[51]  That holding controls here, at least given the paucity of defendants-third-party plaintiffs' evidentiary showing.[52]  ED&F was "organized under the laws of [England], with operations, properties, and assets predominantly located in [England].  New York [was] neither [ED&F]'s place of incorporation nor its primary place of business."[53]  On this record, no reasonable trier of fact could conclude that ED&F was at home in New York, and "[t]o subject it to all-purpose general jurisdiction in [New York] would deny it due process."[54]

---

[49] 571 U.S. 117 (2014).

[50] *Sonera Holding*, 750 F.3d at 225-26.

[51] *Id.* at 226.

[52] *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (explaining that when non-moving party bears burden of proof at trial, moving party is entitled to summary judgment if non-movant fails to make showing on essential element of its claim); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (holding that summary judgment is appropriate where party having burden of proof at trial, after adequate time for discovery, fails to make showing sufficient to establish essential element of its claim); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (stating that there is no issue for trial unless non-moving party adduces sufficient evidence to warrant jury finding in its favor).

[53] *Sonera Holding*, 750 F.3d at 226.

[54] *Id.*; *see Gucci Am., Inc. v. Wixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (holding that a district court may not exercise general jurisdiction over a foreign bank with "only four branch offices in the United States and only a small portion of its worldwide business . . . conducted in New York").

*Specific Personal Jurisdiction*

Section 302(a)(1) of the New York Civil Practice Law and Rules allows the exercise of specific jurisdiction over a non-domiciliary that transacts business or contracts in New York if the asserted cause of action arises from such acts. The exercise of jurisdiction nonetheless must be consistent with the Due Process Clause.[55] For that to be the case, "the defendant's suit-related conduct must create a substantial connection with the forum State."[56]

Here, defendants-third-party plaintiffs have not established a genuine issue of material fact as to personal jurisdiction over their asserted causes of action against ED&F arising from its transactions or contracts in New York. ED&F interacted only with Acer and Duet, the investment managers authorized to act on the Plans' behalf. Neither Acer nor Duet was formed or incorporated in New York, had its principal place of business in New York, or, as far as the record discloses, conducted substantial business related to this litigation in New York. Even if ED&F had "reached out" and solicited or communicated directly with the Plans as clients, there would have been no evidence that the relationship among ED&F, New York, and this action could have been found sufficient to establish specific personal jurisdiction.[57] That two of the three Plans purportedly had addresses in New York would be an insufficient basis for specific jurisdiction over ED&F.[58] Nor is there evidence of ties between the Plans' minimal (and perhaps nominal) presence in New

---

[55] *SKAT*, 2021 WL 4993536, at *7.

[56] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

[57] *See id.* at 283-85.

[58] *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016).

14

York and the trading ED&F conducted for their benefit.  The undisputed facts now make it clear that even ED&F's transactions with the Goldstein Plan's New York-based investment account were essentially "'random, fortuitous, or attenuated' contacts [ED&F made] by interacting with other persons affiliated with the State."[59]  There is no evidence that ED&F elected to use New York's banking system.  The contracts governing ED&F's relationship with the Plans were governed by English law, and ED&F maintained the Plans' brokerage accounts in England.

At bottom, there is insufficient evidence to raise a genuine issue of material fact regarding minimum contacts sufficient to satisfy due process.[60]  Accordingly, the Court lacks specific jurisdiction over ED&F.

---

[59] *See Walden*, 571 U.S. at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 60-61 (2d Cir. 2019) (summary order) ("This 'essentially adventitious' use of a New York bank account does not establish personal jurisdiction.") (quoting *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012)).

[60] *Walden* at 284.

## *Conclusion*

For the foregoing reasons, ED&F's motion for summary judgment dismissing the third-party complaint against it in each of these cases (Dkt 1869) is granted for want of personal jurisdiction. To the extent the motion was made in other cases, it remains pending. The Clerk shall terminate the third-party actions in the three cases listed in the caption. The Court need not address the merits of the remainder of the motion.

SO ORDERED.

Dated:    March 13, 2026

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Lewis A. Kaplan
　　　　　　　　　　　　　　　　　　　　United States District Judge