# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:  1:18-cv-05374; 1:18-cv-08655 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

## THIRD-PARTY PLAINTIFFS/COUNTERCLAIM-DEFENDANTS REPLY IN SUPPORT OF MOTION TO DISMISS ED&F MAN CAPITAL MARKETS LTD.'S AMENDED COUNTERCLAIMS

KOSTELANETZ & FINK LLP

Bryan Skarlatos
Eric Smith
7 World Trade Center, 34th Floor
250 Greenwich Street
New York, NY  10007
T: 212-808-8100
F: 212-808-8108
bskarlatos@kflaw.com
esmith@kflaw.com

*Attorneys for Defendants / Third-Party Plaintiffs Del Mar Asset Management Savings and Retirement Plan and Federated Logistics LLC 401(K) Plan*

Third-Party Plaintiffs and Defendants-in-Counterclaim Del Mar Asset Management Savings and Retirement Plan (the "Del Mar Plan") and Federated Logistics LLC 401(K) Plan (the "Federated Plan') (together, the "Plans"), respectfully submit this reply memorandum of law in further support of their motion to dismiss the counterclaim of Third-Party Defendant and Counterclaimant ED&F Man Capital Markets Ltd. ("ED&F").

## PRELIMINARY STATEMENT

ED&F's indemnification counterclaim is grounded on the false or willfully ignorant belief that creating 12 false tax vouchers (out of 16) could be the result of anything other than their own intentional and/or negligent misconduct for which indemnification is not available. ED&F's attempts to minimize the extent of the false information on the vouchers, the importance of such vouchers in securing the refunds issued to the Plans, as well as their own role in securing the refunds issued to the Plans from Plaintiff Skatteforvaltningen ("SKAT") do nothing but obfuscate the simple truth that all claims for which ED&F may incur losses involve ED&F's own intentional misconduct. Accordingly, such losses are expressly excluded by law and the terms of the parties' relevant custody agreements.[1] For that reason, the indemnification counterclaim should be dismissed.

## ARGUMENT

**I.    ED&F's Intentional Production of False Tax Vouchers Constitutes Fraudulent and/or Negligent Misconduct**

ED&F spills a lot of ink trying in vain to draw attention away from the obvious consequences of its admission to producing the false tax vouchers to the Plans. First, it classifies

---

[1] The Del Mar Plan custody agreement and the Federated Plan custody agreement (the "Custody Agreements") are identical in all material respects and attached as Exhibit A and Exhibit B to ED&F's Answer to the Third-Party Complaint (Doc. No. 326).

1

the false information included in the tax vouchers as "inaccuracies" or "inaccurate information." *See* ED&F's Opposition [Doc. No. 357] at p. 11.  Next, it disassociates itself entirely from the refund application process by declaring that it did not "submit these false vouchers to SKAT but instead provided them to the pension plans through the pension plans' agents." *See* ED&F's Opposition [Doc. No. 357] at p. 8.  ED&F then downplays the importance of these tax vouchers to the Plans' applications for withholding tax refunds from SKAT.  *See* ED&F's Opposition [Doc. No. 357] at p. 8 ("According to SKAT, the tax vouchers were only one component of the tax refund Applications…").  Finally, ED&F clings to the fact that SKAT has not named ED&F as having participated in a fraudulent scheme. *See* ED&F's Opposition [Doc. No. 357] at p. 2, 10-11.  Each of these attempts is either incorrect or misleading and ignores the inescapable truth that the production of false tax vouchers was a deliberate act that was at least negligent, if not fraudulent.

The 16 tax vouchers issued by ED&F to the Plans followed the same format.  On each of the tax vouchers, ED&F confirmed the Plans' relevant shareholdings over the applicable dividend dates, described the dividends received by the Plans from the Danish-listed company net of withholding taxes suffered and stated that "the dividends specified on this credit advice were paid net of withholding tax to [the Plan]."[2]

In ED&F's Amended Defense filed in connection with SKAT's suit in the United Kingdom (the "English Action"), ED&F claims that eighty tax vouchers identified on Annex E ("Annex E Tax Vouchers"), which included 12 of the tax vouchers issued to the Plans, were inaccurate because (i) the indicated amounts had not been received by the Plans by way of dividend from the indicated Danish-listed company and (ii) the indicated withholding tax amounts had not been

---

[2] See Third-Party Complaint [Doc. No. 220] ¶ 27.

"suffered" by the identified pension plans in relation to such dividends.[3]  ED&F's Opposition [Doc. No. 357] at p. 11.  43.  The 12 tax vouchers issued to the Plans included among the Annex E Tax Vouchers are identical in appearance, format and language to the other four tax vouchers issued to the Plans that ED&F has not identified as being inaccurate.  *See* Third-Party Complaint [Doc No. 220] ¶ 43.

ED&F's tortured argument about the Annex E Tax Vouchers begs the Court to ignore the plain meaning of its admission and, instead, see inaccuracies where there are falsehoods.[4]  A tax voucher that transposed a digit in reporting the number of shares held may be fairly characterized as inaccurate.  A tax voucher that misrepresents the central purpose for which such document was created – i.e., that the Plan received a dividend and suffered dividend withholding tax in the amounts indicated – is false.  Repeating this misstatement on 12 of 16 tax vouchers removes any possibility that the issue was an honest mistake.  Indeed, it is inconceivable that the Annex E Tax Vouchers could have been modified to remedy what ED&F classifies as mere inaccuracies.  Moreover, there was no discernable way for the Plans to have known which of the 16 tax vouchers issued by ED&F could be used in their withholding tax refund applications and which were ones that reflected amounts that had not been received by dividend and withholding taxes that were not suffered by the Plans.

It is also troubling for ED&F to imply that it was unaware the tax vouchers would be used to request a withholding tax refund, or of the import of such vouchers in the Plans' ability to obtain a refund.  Even though ED&F did not send the Plans' tax vouchers directly to the tax reclaim

---

[3] The Amended Defense is attached as Exhibit 6 to the Plans' Motion to Dismiss.  See Declaration of Eric Smith in Support of Motion to Dismiss.  [Doc. No. 304].

[4] ED&F still has not provided the basis for which it determined that the Annex E Tax Vouchers contained false representations despite numerous discovery requests on that issue. [See Doc. No. 351].

agent, it did so for other plans[5] and were certainly aware that tax vouchers it issued as broker and custodian of the shares would form the basis of the withholding tax refund application.

It strains all credulity to believe that the production of 12 false tax vouchers to the Plans (out of 16) in which ED&F was aware would be used by the Plans in their withholding tax refund applications could be the product of anything other than negligence and/or fraudulent misconduct on the part of ED&F. Indeed, ED&F's reliance on the fact that it has not been named by SKAT as a fraud defendant *per se* in the English Action reveals just how far out on a limb it must go to avoid grappling with the inconvenient truth that is Annex E.

## II. ED&F Cannot Be Indemnified for Its Own Negligence or Intentional Misconduct under Contract or as a Matter of Law

Indemnification is not available to ED&F for any of the claims asserted in this action or the English Action because they are all predicated on factual allegations of its own willful misconduct or negligence. Allowing ED&F to be indemnified for liabilities that arise out of the Plans' reliance on ED&F's intentional and knowing creation of the false tax vouchers issued to the Plans is the definition of allowing a party to take advantage of its own wrongful act, which is prohibited as against public policy in NY. See *CBS Corp. v. Eaton Corp.*, No. 07 Civ. 11344 (LBS), 2010 WL 1375169 (S.D.N.Y. Mar. 30, 2010). In addition, the plain language of the Custody Agreements excludes the Plans from indemnifying ED&F for "any liability, loss, or cost arising out of the willful, default, fraud or negligence of [ED&F]." Custody Agreements ¶16(b). Having admitted to preparing 12 false tax vouchers on which the Plans relied, ED&F cannot escape

---

[5] In its Re-Amended Defence filed in the English Action on January 18, 2020, ED&F states that 72 of the 420 tax vouchers that it issued were sent directly to the plans' tax reclaim agent, Goal Taxback. See Re-Amended Defence ¶ 17.1A

4

the reach of the only permissible construction of ¶16(b), which is to deny ED&F any claim for indemnification.

As a result of the false tax vouchers ED&F admitted to creating and issuing to the Plans, the Plans have raised a claim for intentional fraudulent conduct as well as negligent misrepresentation. ED&F's Opposition incorrectly argues that the Plans have asserted numerous causes of action that require no finding of intentional, negligent or otherwise tortious wrongdoing and, therefore, any losses arising from such contract-based claims are fully indemnifiable under the Custody Agreement. This conclusion rests on a fundamental misunderstanding of the factual allegations against ED&F set forth in the Third-Party Complaint. Specifically, the Third-Party Complaint sets forth that ED&F should be liable for breach of contract, breach of fiduciary duty, promissory estoppel, and equitable indemnification as a direct consequence of ED&F's own negligence or fraud in issuing false tax vouchers. Accordingly, any losses arising from such claims would not qualify as a simple breach of contract but would instead be a willful default and not indemnifiable under the Custody Agreements. See *In re Lehman Bros Holdings Inc.*, 602, B.R. 564 (Bankr. S.D.N.Y. 2019).

ED&F also incorrectly asserts that it will be entitled to indemnification for litigation costs and attorney fees if it prevails against the Plans in this action. New York imposes a strong presumption against reading an indemnification provision to cover expenses incurred in litigation between parties to the contract. *In re Platinum-Beechwood Litig.*, 378 F. Supp. 3d 318, 323 (S.D.N.Y. 2019); *Hooper Assocs. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 492, 548 N.E.2d 903, 905 (N.Y. 1989). The applicable standard in New York is "[i]f the claims covered refer 'exclusively' or 'unequivocally' to claims between the parties, a [c]ourt may interpret an indemnification agreement to include such claims. If not, then a court must find the agreement to

be lacking evidence of the required intent." *Sequa Corp. v. Gelmin*, 851 F.Supp. 106, 110-11 (S.D.N.Y.1994) (discussing *Hooper Assocs.*, 74 N.Y.2d 487, 548 N.E.2d 903).

The indemnification provision in the Custody Agreements require the Plans to indemnify ED&F for "each liability, loss and cost which may be suffered or incurred…and any Tax for which [ED&F] is or may be liable…"  Therefore, the Custody Agreements do not support an indemnification claim against the Plans by ED&F for the costs and fees associated with inter-party litigation.

## **CONCLUSION**

For the reasons set forth above and in its Memorandum of Law, the Plans request that the Court dismiss with prejudice ED&F's counterclaims.

June 23, 2020                                              Respectfully submitted,

KOSTELANETZ & FINK LLP


 /s/ Eric Smith
Bryan Skarlatos
  bskarlatos@kflaw.com
Eric Smith
  esmith@kflaw.com
7 World Trade Center, 34th Floor
250 Greenwich Street
New York, NY  10007
T: 212-808-8100
F: 212-808-8108

*Attorneys for Defendants / Third-Party Plaintiffs Del Mar Asset Management Savings and Retirement Plan, Federated Logistics LLC 401(K) Plan, and David Freelove*