**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to:
18-cv-05374; 18-cv-08655.

MASTER DOCKET

18-md-2865 (LAK)

## <u>PROPOSED SPECIAL VERDICT FORM</u>

**PLEASE Indicate your Verdict with a Check Mark (✓)**

**PART ONE**

**SECTION A. Fraud Claims**

1.      SKAT's proposal:[1]

Did SKAT prove that the reclaim applications based on the non-Dubai *cum-ex* tax vouchers were false because the Plans did not receive the dividends, net of withholding tax?

(a)      **By Clear and Convincing Evidence:** Yes _____ No _____

---

1.   As set forth in its briefs on disputed issues of foreign law, SKAT's position is that all the refund claims, including those based on the *cum-cum* trades, were false as a matter of English contract law because under ED&F's Terms and Conditions of Business, when ED&F provided the plans financing for their purported share purchases, which there is no genuine dispute that it did for every purported trade, ED&F, not the plans, owned any shares or dividends.  (ECF Nos. 1946, 1978, 2008.)  Thus, there is no factual dispute for the jury to resolve with respect to whether all the refund claims were materially false for that reason.  Similarly, SKAT's position is that there is no genuine dispute that the reclaims based on the Dubai tax vouchers (also referred to as the Annex E vouchers) contained false statements of material fact for the additional reason that neither ED&F nor the plans received any dividends, net of withholding tax, in the first place.  Thus, there is no need to ask the jury whether those reclaims were false for that additional reason.  SKAT also proposes that the special verdict form refer to these reclaims as the "Dubai reclaims," instead of "Annex E," because what the tax vouchers submitted therewith all ultimately have in common is that the ultimate counterparty in the underlying trade was ED&F's Dubai affiliate.  Even though SKAT's position is that all the tax vouchers, including the non-Dubai *cum-ex* vouchers, were false in any event because ED&F, not the plans, owned any shares or dividends, whether the Freelove plans' reclaims that included the non-Dubai *cum-ex* vouchers were false for the additional reason that the plans never received any dividends, net of withholding tax, in the first place is relevant to subsequent questions concerning Mr. Freelove's *scienter* and knowledge of the fraud.  Thus, SKAT's position is that, with respect to falsity, the jury should be asked only whether SKAT proved that the reclaims based on the non-Dubai *cum-ex* vouchers were false for the additional reason that the plans never received dividends, net of withholding tax.  Also, SKAT's position is that if these tax vouchers were false, as SKAT contends, because the plans did not receive dividends, net of withholding tax (as with the Dubai tax vouchers), then there is no genuine dispute that those false statements were material.

Defendants object to what amounts to an untimely and improper summary judgment motion in the foregoing footnote.  For the avoidance of any doubt, defendants dispute whether the reclaims contained false statements, including for the reasons SKAT articulates with respect to English law-governed contracts, and SKAT's inclusion of any question about a false statement is wholly inconsistent with its stated position.  Defendants further object to SKAT's newly minted terms "Dubai tax vouchers" and "non-Dubai *cum-ex* tax vouchers."  For years, SKAT has referred to three categories of trades at issue in this case: Annex E, non-Annex E, and *cum-cum*.  *See* ECF No. 660-1 (Joint Status Report dated Sept. 3, 2021); ECF No. 817 (SKAT's Memorandum of Law in Support of its Motion for Partial Summary Judgment).  SKAT's proposed nomenclature would cause immense jury confusion: for example, SKAT's expert Graham Wade never uses these terms in his reports, nor do any of the three ED&F witnesses whose deposition testimony SKAT designated.  Further, the fact that the ultimate counterparty in the Annex E trades was located in Dubai is irrelevant to the issues in this trial, whereas the fact that ED&F did not admit until 2019 that the tax vouchers identified in Annex E should not have been issued is highly probative of Mr. Freelove's state of mind at the time the trading occurred.

*If you answered "Yes" for Question 1(a), skip Question 1(b) and proceed to Question 2.  If you answered "No" to Question 1(a), proceed to Question 1(b).*

(b)      **By a Preponderance of the Evidence:** [2]  Yes _____ No _____

*Regardless of your for Question 1(b), proceed to Question 2.*

Defendants' proposal:

Did SKAT prove that the reclaim applications based on the following groups of tax vouchers contained false, material statements of fact?

(a)      Annex E

    i.  By Clear and Convincing Evidence:   Yes _____ No _____

    ii.  By a Preponderance of the Evidence:  Yes _____ No _____

(b)      Non-Annex E *cum-ex*

    i.  By Clear and Convincing Evidence:   Yes _____ No ___

    ii.  By a Preponderance of the Evidence:  Yes _____ No ___

*If you answered "yes" to Question 1(a) and/or Question 1(b), proceed to Question 2.  If you answered "no" to Questions 1(a) and 1(b), skip Questions 2 through 9 and proceed directly to Section D, Question 10.*

2.      Did SKAT prove that David Freelove made or caused to be made the false statements in the reclaim applications?

(a)      The Del Mar Plan's Reclaim Applications

    i.  By Clear and Convincing Evidence:   Yes _____ No _____

    ii.  By a Preponderance of the Evidence:  Yes _____ No _____

(b)      The Federated Logistics Plan's Reclaim Applications

    i.  By Clear and Convincing Evidence:   Yes _____ No ___

---

2  Defendants object to permitting the jury to determine any of the elements of fraud by a preponderance of the evidence for the reasons described in ECF Nos. 1114, 1115, 1356, 1398, and 1399 (incorporated by reference via ECF No. 1972).  This objection applies to instructions on all claims sounding in fraud, including fraud and aiding and abetting fraud.  To the extent Defendants make or join any proposed formulation in this form that includes language concerning the preponderance standard, it is made subject to the foregoing objection.

       ii.  By a Preponderance of the Evidence:  Yes _____ No ___

*If you answered "yes" to Question 2(a) and/or Question 2(b), proceed to Question 3.  If you answered "no" to Questions 2(a) and 2(b), skip Question 3 and proceed directly to Question 4.*

3.       Did SKAT prove that David Freelove knew, at the time the reclaim applications were submitted to SKAT, that the statements in those reclaim applications were false, or that David Freelove acted recklessly with regard to whether those statements were true or false?

SKAT's proposal:[3]

  (a)     **By Clear and Convincing Evidence:**

       Yes as to all _____

       Yes as to all the *cum-ex* Reclaims ____

       Yes as to the Dubai Reclaims ___

       None _____

*If you answered "Yes as to all" for Question 3(a), skip Question 3(b) and proceed to Question 4.  If you answered "Yes as to all the* cum-ex *Reclaims," "Yes as to the Dubai Reclaims," or "No" to Question 3(a), proceed to Question 3(b).*

  (b)     **By a Preponderance of the Evidence:**

       Yes as to all _____

       Yes as to all the *cum-ex* Reclaims _____

---

3.   SKAT's position is that to reduce the number of questions on the verdict form, where it is necessary to delineate between the different categories of tax vouchers in the reclaims, *i.e.*, between Dubai, non-Dubai *cum-ex*, and *cum-cum*, the jury should be asked the question only once and given options in the answers to specify to which reclaims the finding applies, if not all of them, rather than asking the same question multiple times with respect to the different categories, as defendants propose.  For instance, the Del Mar and Federated Logistics Plans collectively submitted 16 reclaims: 12 Dubai, 3 non-Dubai *cum-ex*, and 1 *cum-cum*.  Thus, the jury may be asked just once whether SKAT proved that Mr. Freelove knew the statements in the reclaim applications were false or acted recklessly without regard to their truth and specify in the answer whether it finds as much for all 16, all 15 *cum-ex* reclaims, just the 12 Dubai reclaims, or none of them.

For the reasons stated in footnote one, Defendants object to SKAT's terminology.  Defendants further object to all portions of the verdict form that give the jury the option of answering a question "Yes as to all" because Defendants' position is that the *cum-cum* reclaim at issue in this litigation contained no incorrect statements of fact.

Yes as to the Dubai Reclaims ____

None _____

*Regardless of your answer to Question 3(b), proceed to Question 4.*

Defendants' proposal:

(a)    By Clear and Convincing Evidence:

Yes as to the Annex E and non-Annex E cum-ex Reclaims _____

Yes as to the Annex E Reclaims _____

None _____

(b)    By a Preponderance of the Evidence:

Yes as to the Annex E and non-Annex E cum-ex Reclaims _____

Yes as to the Annex E Reclaims _____

None _____

*Regardless of your answer to Question 3(a) and/or Question 3(b), proceed to Question 4.*

4.    Did SKAT prove that, in issuing refund payments to the Del Mar Plan and Federated Logistics Plan, SKAT justifiably relied on the false statements contained in the plans' reclaim applications?

(a)    **By Clear and Convincing Evidence:**  Yes _____ No _____

(b)    **By a Preponderance of the Evidence:**  Yes _____ No _____

*If you answered "yes" to Question 4(a) and/or Question 4(b), proceed to subsection B, Question 5.  If you answered "no" to Questions 4(a) and 4(b), skip Questions 5 through 9 and proceed directly to subsection D, Question 10.*

## SECTION B. Aiding and Abetting Fraud Claim

5.    Did SKAT prove that the refund payments SKAT paid to the Del Mar Plan and the Federated Logistics Plan were procured by a fraud perpetrated by someone other than David Freelove?

SKAT's proposal:

(a)    **By Clear and Convincing Evidence:**

4

Yes as to all _____

Yes as to all the *cum-ex* Reclaims _____

Yes as to the Dubai Reclaims _____

None ____

*If you answered "Yes as to all" for Question 5(a), skip Question 5(b) and proceed to Question 6. If you answered "Yes as to all the* cum-ex *Reclaims," "Yes as to the Dubai Reclaims," or "No" to Question 5(a), proceed to Question 5(b).*

(b)    **By a Preponderance of the Evidence:**

Yes as to all _____

Yes as to all the *cum-ex* Reclaims _____

Yes as to the Dubai Reclaims _____

None ____

*If you answered "Yes as to all" "Yes as to all the cum-ex Reclaims" or "Yes as to the Dubai Reclaims" for Question 5(b), proceed to Question 6. If you answered "None" to both Questions 5(a) and 5(b), skip Questions 6 and 7, and proceed to Question 8.*

Defendants' proposal:

(a) **By Clear and Convincing Evidence:**

Yes as to the Annex E and non-Annex E *cum-ex* Reclaims _____

Yes as to the Annex E Reclaims _____

None _____

(b) **By A Preponderance of the Evidence:**

Yes as to the Annex E and non-Annex E cum-ex Reclaims _____

Yes as to the Annex E Reclaims _____

None _____

6.    Did SKAT prove that David Freelove knew or consciously avoided knowing that the Del Mar Plan's and Federated Logistics Plan's reclaim applications were fraudulent?

SKAT's proposal:

5

(a)      **By Clear and Convincing Evidence:**

Yes as to all \_\_\_\_

Yes as to all the *cum-ex* Reclaims _____

Yes as to the Dubai Reclaims _____

None \_\_\_

*If you answered "Yes as to all" for Question 6(a), skip Question 6(b) and proceed to Question 7.  If you answered "Yes as to all the* cum-ex *Reclaims," "Yes as to the Dubai Reclaims," or "No" to Question 6(a), proceed to Question 6(b).*

(b)      **By a Preponderance of the Evidence:**

Yes as to all \_\_\_\_

Yes as to all the *cum-ex* Reclaims \_\_\_\_\_

Yes as to the Dubai Reclaims _____

None \_\_\_

*If you answered "Yes as to all" "Yes as to all the cum-ex Reclaims" or "Yes as to the Dubai Reclaims" for Question 6(b), proceed to Question 7.  If you answered "None" to both Questions 6(a) and 6(b), skip Question 7, and proceed to Question 8.*

Defendants' proposal:

(a) **By Clear and Convincing Evidence:**

Yes as to the Annex E and non-Annex E *cum-ex* Reclaims _____

Yes as to the Annex E Reclaims _____

None _____

(b) **By A Preponderance of the Evidence:**

Yes as to the Annex E and non-Annex E cum-ex Reclaims _____

Yes as to the Annex E Reclaims _____

None _____

*If you answered Question 6(a) and/or Question 6(b) "Yes as to the Annex E and non-Annex E cum-ex Reclaims" or "Yes as to the Annex E Reclaims" proceed to Question 7. If you answered "None" to Question 6(a) and Question 6(b), skip question 7 and proceed directly to subsection C, Question 9.*

7.    Did SKAT prove that David Freelove provided substantial assistance in the submission of fraudulent reclaim applications on behalf of the Del Mar Plan and Federated Logistics Plan?

SKAT's proposal:[4]

(a)    **By Clear and Convincing Evidence:**        Yes _____ No _____

*If you answered "Yes" to Question 7(a), skip Question 7(b), and proceed to Question 8. If you answered "No" to Question 7(a), proceed to Question 7(b).*

(b)    **By a Preponderance of the Evidence**:        Yes _____ No _____

*Regardless of your answer to Question 7(b), proceed to Question 8.*

Defendants' proposal:

(c)    The Del Mar Plan's Reclaim Applications

    i.   By Clear and Convincing Evidence:   Yes _____ No _____

    ii.  By a Preponderance of the Evidence:  Yes _____ No _____

(d)    The Federated Logistics Plan's Reclaim Applications

    i.   By Clear and Convincing Evidence:   Yes ____ No ____

    ii.  By a Preponderance of the Evidence:  Yes ____ No ____

*Regardless of your answer to Question 7(a) and 7(b), proceed to Question 8.*

## SECTION C. Negligent Misrepresentation Claims

---

4.    SKAT's position is that there is no need to distinguish between the Del Mar Plan and the Federated Logistics Plan with respect to the issue of the substantial assistance SKAT alleges Mr. Freelove provided.

Defendants' position is that the proof regarding Mr. Freelove's role with respect to the Del Mar Plan and the Federated Logistics Plan will differ, and it is therefore appropriate to distinguish between the two plans in this question.

Defendants' proposal:[5]

8. Did SKAT prove by a preponderance of the evidence a special relationship between David Freelove and SKAT?

        Yes \_\_\_\_\_

        No _____

*If you answered "Yes" to Question 8, proceed to Question 9.  If you answered "no" to Question 8, skip Question 9 and proceed directly to Question 10.*

9. Did SKAT prove by a preponderance of the evidence that David Freelove failed to use reasonable care to ensure that the statements in the Del Mar Plan's and Federated Logistics Plan's reclaim applications were correct?

    i.  Yes as to all \_\_\_\_ [6]

    ii.  Yes as to [all the *cum-ex*/the Annex E and non-Annex E *cum-ex*] Reclaims \_\_\_\_\_

    iii.  Yes as to the [Annex E/Dubai] Reclaims \_\_\_\_\_

    iv.  None \_\_

*Regardless of your answer to Question 9, proceed to Question 10.*

### SECTION D. Unjust Enrichment/Money Had & Received/Payment by Mistake Claims

10. Did SKAT prove by a preponderance of the evidence that equity and good conscience do not permit David Freelove to retain money he received from SKAT?

---

5. SKAT's position is that should the jury determine that Freelove made or caused to be the false statements in the reclaims, then there is no genuine dispute that "the relationship of the parties . . . is such that in morals and good conscience [SKAT] ha[d] the right rely upon [Freelove] for information." *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL 7496272, at *4 (S.D.N.Y. Dec. 21, 2020) (internal quotation omitted). Freelove "cannot claim plausibly that [he] did not intend for SKAT rely on the statements and information" in the reclaims that he "submitted specifically for [the] purpose" of obtaining the refund payments. *Id.*

    Defendants' position is that SKAT must prove "a privity-like relationship" between SKAT and the defendants. *See In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-04051, 2023 WL 8039623, at *16 n.74, *20 (S.D.N.Y. Nov. 20, 2023).

6. SKAT's position is that the jury must have the option to answer "Yes as to all" to account for the *cum-cum* reclaim application.

Yes _____ No _____

*If you answered "yes" to Question 10, proceed to Question 11.  If you answered "no" to Question 10, skip Question 11 and proceed directly to Question 12.*

11.    In what dollar amount do you find that David Freelove was unjustly enriched?

$_____

*Proceed to Question 12.*

12.    Did SKAT prove by a preponderance of the evidence that equity and good conscience do not permit the Del Mar Plan to retain money it received from SKAT?

Yes _____ No _____

*If you answered "yes" to Question 12, proceed to Question 13.  If you answered "no" to Question 12, skip Question 13 and proceed directly to Question 14.*

13.    In what dollar amount do you find that the Del Mar Plan was unjustly enriched?

$_____

*Proceed to Question 14.*

14.    Did SKAT prove by a preponderance of the evidence that equity and good conscience do not permit the Federated Logistics Plan to retain money it received from SKAT?

Yes _____ No _____

*If you answered "yes" to Question 14, proceed to Question 15.  If you answered "no" to Question 14, skip Question 15 and proceed directly to Question 16.*

15.    In what dollar amount do you find that the Federated Logistics Plan was unjustly enriched?

$_____

*Regardless of your answers to any questions in Part One, proceed to Part Two and follow the instructions there.*

**PART TWO**

Defendants' proposal:

9

1.  **Statute of Limitations**[7]

    *If you answered "Yes" to Question 4(a) and/or Question 4(b), and/or answered "yes as to the Annex E and non-Annex E cum-ex Reclaims" or "yes as to the Annex E Reclaims" to Question 9, answer Question 16. Otherwise, proceed to Question 17.*

    16.     As to the Federated Logistics Plan's reclaims, have the Defendants proven by a preponderance of the evidence that those reclaims were submitted to SKAT before June 11, 2015?

    Yes _____ No _____

2.  **Comparative Fault**

    *If you answered "Yes" to Questions 8 and 9, please answer the following Question 17.*

    17.     Have the Defendants proven by a preponderance of the evidence that SKAT was negligent in making refund payments to the Del Mar Plan and the Federated Logistics Plan?

    Yes _____ No _____

    *If you answered "yes" to Question 17, proceed to Question 18. If you answered "no" to Question 17, skip Questions 18, 19, and 20.*

    18.     Have the Defendants proven by a preponderance of the evidence that SKAT's negligence was a substantial factor in bringing about its own injuries?

    Yes _____ No _____

    *If you answered "yes" to Question 18, proceed to Question 19. If you answered "no" to Question 18, skip Questions 19 and 20.*

    19.     For the refund payments made to the Del Mar Plan, indicate the percentage of fault of SKAT, ED&F, Duet, David Freelove and the Del Mar Plan:

    SKAT                                        _____ %

    ED&F                                        _____ %[8]

---

7.  SKAT objects to the inclusion of defendants' proposed statute of limitations question.

    Defendants believe the question is appropriate under applicable Connecticut law. *See* Conn. Gen. Stat. Ann. § 52-577.

8.  SKAT's position is that the jury should apportion fault amongst all relevant parties, including ED&F and Duet.

10

Duet           _____%

Del Mar Plan           _____ %

David Freelove           _____ %

*Total*           _____ %

(Total Must Equal 100)

*Proceed to Question 20.*

20.     For the refund payments made to the Federated Logistics Plan, indicate the percentage of fault of SKAT, ED&F, Duet, David Freelove, and the Federated Logistics Plan:

SKAT           _____ %

ED&F           _____ %

Duet           _____%

Tatjana Vanjak           _____%

Federated Logistics Plan           _____ %

David Freelove           _____ %

*Total*           _____ %

(Total Must Equal 100)

---

Defendants' position is that apportionment amongst ED&F, Duet and Ms. Vanjak would be inappropriate. ED&F was dismissed due to lack of personal jurisdiction, and neither Duet (which no longer exists) nor Ms. Vanjak (who is deceased) were ever named as parties.

11